IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| FANNY K.F. TSUN, ) | CIVIL NO. 12-00051 LEK-KSC |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| WDI INTERNATIONAL, INC., JOHN ) | |
| DOES 1-10, AND DOE ENTITIES ) | |
| 1-10, INCLUSIVE, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**ORDER GRANTING WDI'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF FANNY K.F. TSUN'S COMPLAINT FILED ON JANUARY 24, 2012**

Before the Court is Defendant WDI International, Inc.'s ("WDI") Motion for Summary Judgment on Plaintiff Fanny K.F. Tsun's Complaint Filed on January 24, 2012 ("Motion"), filed on November 26, 2012. [Dkt. no. 58.] Plaintiff Fanny K.F. Tsun ("Plaintiff") filed her memorandum in opposition on January 21, 2013.[1] [Dkt. no. 75.]

This matter came on for hearing on March 18, 2013. Appearing on behalf of Defendant was Matt A. Tsukazaki, Esq., and appearing on behalf of Plaintiff was Roman F. Amaguin, Esq. After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, WDI's Motion is

---

[1] WDI filed its reply on March 7, 2013. Because WDI's reply was filed three days late, this Court granted Plaintiff's Objection and Request to Strike Defendant's Reply in Support of its Motion for Summary Judgment, and denied WDI's Motion to Accept Late Filed Reply Memorandum in Support of the Motion for Summary Judgment on Plaintiff's Complaint. [Dkt. no. 89.]

HEREBY GRANTED for the reasons set forth below.

## BACKGROUND

Plaintiff filed her Complaint in the instant action on January 24, 2012. In the Complaint, Plaintiff alleges that her former employer, WDI, violated the Family and Medical Leave Act, 29 U.S.C. §§ 2601, et seq. ("FMLA"), and Hawaii's Family Leave Law, Haw. Rev. Stat. § 398-1, et seq. ("HFLL"), when it terminated her employment.

### I. Factual Background

Plaintiff began working for WDI in 1991. On September 27, 2011, Plaintiff received approval for a leave of absence to care for her ill father-in-law in Hong Kong.[2] [Compl. at ¶ 16.] Plaintiff alleges that in response to her request for leave, WDI's Director of Operations, Lawrence Chun, informed her that she could "take as much time as needed." [Id. at ¶ 19.] On the leave form that Plaintiff alleges Chun "assisted Plaintiff in completing," the two estimated that Plaintiff would need two weeks of leave. [Id. at ¶ 19.] Plaintiff alleges that Chun instructed her to leave the "return date" and "end date" blank,

---

[2] The parties dispute whether Plaintiff's leave was discussed with and approved by Plaintiff's supervisor, Midori Libby, [see WDI's Concise Statement of Facts in Support of the Motion ("WDI's CSF") at ¶ 1,] or Lawrence Chun, WDI's Director of Operations, [see Plaintiff's Concise Statement of Facts in Opposition to WDI's Motion ("Plaintiff's CSF") at ¶ 1.] Regardless, Plaintiff was granted two weeks of approved personal leave. [Mem. in Supp. of Motion, Exh. B (Approved Request for Time Off Form).]

2

stating that "if you need more time, an extension, just call us and let us know." [Id. at ¶ 20.]

On September 28, 2011, Plaintiff's father-in-law passed away in Hong Kong. [WDI's Concise Statement of Facts ("WDI's CSF"), Exh. E (Births and Deaths Registry, Hong Kong, Oct. 17, 2011).] As a result of the death, Plaintiff was entitled to three days of bereavement leave under WDI's company policy. [Id. at ¶ 3.] After the expiration of her three days of bereavement leave and two weeks of personal leave on October 14, 2011, Plaintiff was required to return to work on October 17, 2011. [Id. at ¶ 5.]

Plaintiff claims that on October 11, 2011, she called WDI's offices to provide a definitive return date. [Compl. at ¶ 21.] Plaintiff alleges that she left a message with her coworker, Mina Webster, for her immediate manager, Midori Libby, stating that her father-in-law had passed away, and that she would be unable to return to work until around "the end of the month." [Id. at ¶ 23.] Plaintiff alleges that after this conversation she did not hear back from WDI, and called back on October 25, 2011. Plaintiff alleges that she spoke to Ms. Libby and confirmed that she would be unable to return until the end of the month. Plaintiff alleges that Ms. Libby stated that it was "OK" and that "I will let Kal [Parikh–Secretary of Finance]

3

know."  [Id. at ¶ 24.][3]

Plaintiff claims that on October 30, 2011, she slipped and fell on a wet floor and injured her back.  [Id. at ¶ 25.] Plaintiff states that she saw a physician in Hong Kong that same day, who recommended that she rest completely and not travel for at least two weeks.  [Id. at ¶ 26.]  On the same day, Plaintiff alleges she called WDI and informed Ms. Libby of her injury and that she could not return to Honolulu until November 19, 2011. Plaintiff alleges that Ms. Libby stated "OK, I will let Kal know."  [Id. at ¶ 28.]

Plaintiff never filled out any paperwork documenting her leave under the FMLA.  [Id. at ¶ 29.][4]  On November 14, 2011, Ms. Libby called Plaintiff and asked her to return to work on November 21, 2011.  [Id. at ¶¶ 30-31.]  On November 21, 2011, Plaintiff went into the office and was notified of her

---

[3] WDI disputes this version of the facts, and states that Plaintiff failed to speak to her supervisor, Ms. Libby, at any time between September 27, 2011 and October 30, 2011, and that prior to October 30, 2011, Plaintiff never made a request to Ms. Libby (her supervisor) for leave beyond the approved two weeks. [WDI's CSF at ¶¶ 7-9.]

[4] WDI disputes that Plaintiff ever invoked her rights under FMLA or stated any qualifying reason for FMLA or HFLL leave for the period of time after the expiration of the initial two weeks of approved leave through October 30, 2011.  [WDI's CSF at ¶ 11.] WDI further states that Plaintiff never provided it with any documentation supporting her request for FMLA leave, never explained that she would need leave after she returned to Hawai`i, and did not provide any information to support her claim of physical disability between September 27, 2011 and October 30, 2011.  [WDI's CSF at ¶¶ 13-19.]

termination.  [Id. at ¶ 32.]  Plaintiff states that after being terminated, Plaintiff saw a doctor in Hawai`i and was diagnosed with a fracture in her lower back.  [Id. at ¶ 33.]  Plaintiff claims that on November 22, 2011, WDI's Corporate Controller, Imelda Antonio, called Plaintiff and told her that she could reapply for her job.  [Id. at ¶ 34.]

The Complaint asserts the following claims: that WDI retaliated and discriminated against Plaintiff and terminated Plaintiff's employment on the basis of a serious health condition in violation of § 2612(1)(D) of the FMLA (Count I); and that WDI retaliated against Plaintiff and terminated Plaintiff's employment on the basis of her taking protected leave in violation of Haw. Rev. Stat. Chapter 398 (Count II).

## II. **WDI's Motion for Summary Judgment**

In the instant Motion, WDI argues that Plaintiff is not entitled to protected leave for either (1) her alleged serious health condition (i.e., her back injury), or (2) her leave to care for her ailing father-in-law in Hong Kong.

As to Plaintiff's FMLA claims, WDI first argues that Plaintiff was not entitled to FMLA-protected leave to care for her father-in-law because the term "parent" under the FMLA does not include parents in-law.  [Mem. in Supp. of Motion at 7-8 (citing 29 C.F.R. § 825.122(b)).]  Second, WDI argues that Plaintiff was not entitled to FMLA-protected leave for her

alleged back injury, as it does not qualify as a "serious health condition" under the FMLA. [Id. at 15-16 (citing WDI's CSF at ¶¶ 17-18).] Finally, WDI contends that Plaintiff's termination was not related to any alleged attempt to exercise her FMLA rights. Rather, Plaintiff failed to report to work and had seemingly abandoned her job, which was accepted by WDI as a voluntary resignation of employment. Plaintiff was terminated because of this abandonment, and because she did not keep her supervisor informed of her situation. [Id. at 18 (citing WDI's CSF at ¶ 25).] As such, WDI argues that Plaintiff is ineligible for relief under FMLA.

As to Plaintiff's HFLL claim, WDI argues that neither Plaintiff's father-in-law's illness and death, nor her own alleged injury entitle her to relief under HFLL. First, WDI argues that, while the definition of "parent" under HFLL does include a "parent-in-law," because Plaintiff's father-in-law was deceased, he did not qualify as having a "serious health condition" as that term is defined in HFLL. [Id. at 28 (citing Haw. Admin. R. § 12-27-6(h)).] Second, Plaintiff's back injury could not provide the basis for her HFLL claim, as HFLL does not provide leave for an employee's own serious health condition. [Id. (citing Haw. Rev. Stat. § 398-3(a); Haw. Admin. R. § 12-27-6(f)).] WDI therefore requests that the Court grant its Motion and enter summary judgment in favor of WDI and against

6

Plaintiff on her Complaint.

**III. Memorandum in Opposition**

In her memorandum in opposition, Plaintiff argues that, notwithstanding WDI's claims that Plaintiff was terminated, because she "failed to report to work," "failed to report to her supervisor," and failed to get approval "beyond the expiration of the two weeks of approved leave," [WDI's CSF at ¶ 25,] the basis for Plaintiff's termination is mere pretext for discrimination, interference, retaliation, and non-restoration of Plaintiff back into her position in violation of the HFLL and FMLA.

First, Plaintiff argues that she was eligible for and entitled to HFLL leave.  Specifically, Plaintiff argues that her father-in-law was hospitalized with a heart condition, which qualifies as a "serious health condition" under HFLL.  [Mem. in Opp. at 4-5 (citing Haw. Rev. Stat § 398-1).]  Plaintiff contends that Lawrence Chun recognized her eligibility by granting her leave for two weeks with the end/return dates left blank.  [Id. at 5; Decl. Of Tsun at ¶¶ 8, 14-18; Plaintiff's Concise Statement of Facts ("Plaintiff's CSF") at ¶¶ 4-13, Exh. E.]  Plaintiff states that she updated WDI regarding her return date, and that the manner in which she communicated with WDI about her leave was consistent with WDI's accepted practice.  [Mem. in Opp. at 7 (citing Webster Decl. at ¶ 3; Tsun Decl. at ¶¶ 22-26; Tsun Deposition at 104-106, 163-165).]  Plaintiff states that WDI

"changed the terms of [her] leave without [her] knowledge," and that it had "clarified any changes in leave terms with other similarly-situated employees on non-HFLA/FMLA leave." [Id. at 5.] Plaintiff argues that she was the only employee disciplined for "calling into work in the manner she did." [Id. at 7.] Plaintiff argues that she had no knowledge that WDI altered her leave form to provide a maximum two-week leave of absence, and that this action is evidence of retaliatory intent. [Id.] Thus, Plaintiff argues that WDI interfered with her rights under HFLL, and retaliated against her for taking HFLL leave.

Second, Plaintiff argues that she was entitled to FMLA leave. Plaintiff states that her back injury constituted a "serious health condition" under FMLA. [Id. at 9 (citing Tsun Decl. at ¶¶ 9-11, 39-43, Exhs. B, C, D, F, I, and J).] Specifically, Plaintiff argues that her back condition satisfied both the "incapacity and treatment" and "chronic condition" definitions of "continuing treatment" under the FMLA. [Id. at 10-12 (citing 29 C.F.R. § 825.133(A); 29 C.F.R. § 825.115).] Plaintiff contends that she reported her injury the day after it occurred, and informed WDI on at least two other occasions (November 14 and 21) that she was unable to perform one or more essential functions of her position and one or more "regular daily activities." [Id. at 11-12.] Plaintiff contends that she received treatment from a doctor in Hong Kong who recommended

8

that she rest and not travel for a week, and that she told her supervisor, Midori Libby, that she was in severe pain and could not travel.  [Id. at 12-13.]  Plaintiff states that when she returned to Hawai`i, she received treatment from Dr. Lumeng on November 21, 2011, and twice more in two weeks.  [Id. at 13-14 (citing Tsun Decl. at ¶¶ 49-51, Exh. J).]  In addition, Plaintiff argues that she satisfies the "chronic condition" prong under 29 C.F.R. § 825.115(c), as she had been receiving ongoing treatment for her back for several years before her accident.  [Id. at 16-17.]

        Plaintiff further argues that she gave WDI proper notice of her need for FMLA leave.  Plaintiff argues that she gave notice on three separate occasions: on October 31, 2011, when she told her employer about her back injury, and on November 14 and 21, 2011, when she called back and repeated that she needed leave due to an injury.  [Id. at 19.]  Plaintiff acknowledges that she did not expressly mention her "FMLA rights," but that she gave WDI sufficient information to create an obligation on its part to inquire further and provide Plaintiff with written notice of her rights, which it failed to do.  [Id. at 20, 22.]  Plaintiff argues that WDI violated FMLA by failing to discuss with Plaintiff why it believed her requested leave was not covered by FMLA, and refusing to document such discussions with Plaintiff.  [Id. at 20-23.]

Plaintiff argues that WDI's termination of Plaintiff and failure to reinstate Plaintiff after she returned from leave covered by FMLA and HFLL constitutes a per se violation of each statute. [Id. at 23-24.]

Plaintiff next argues that WDI interfered with her FMLA and HFLL rights. Specifically, Plaintiff argues that, in her Complaint, she alleges that WDI denied her rights, terminated, and retaliated against her in violation of FMLA, and that this sufficiently pleads an "interference" claim. [Id. at 24 (citing Complaint at ¶¶ 36-42; 29 C.F.R. § 825.220(b)).] Plaintiff argues that an employee can prevail on an FMLA interference claim by showing "by a preponderance of the evidence that [the] taking of FMLA-protected leave constituted a negative factor in the decision to terminate [her.]" [Id. at 25-26 (quoting Xin Liu v. Amway Corp., 347 F.3d 1125, 1136 (9th Cir. 2003)).]

Plaintiff also argues that WDI retaliated against her for taking HFLL and FMLA leave. Plaintiff argues that she tried to exercise her rights under FMLA by calling her employer from Hong Kong to provide an update on her return date; Plaintiff contends leaving the message was consistent with Chun's instructions to "let us know" if she needed more time. [Id. at 27-28 (citing Plaintiff's CSF at ¶¶ 4-16; Webster Decl. at ¶ 3; Tsun Decl. at ¶¶ 22-27).] Plaintiff contends that WDI's claim that this violated company policy is evidence that WDI is

10

singling Plaintiff out in retaliation for her taking protected leave, as other employees have left similar messages with coworkers without being disciplined. [Id. at 28.] Plaintiff thus urges the Court to deny WDI's Motion.

### **STANDARD**

Rule 56 of the Federal Rules of Civil Procedure requires that summary judgment be granted when "the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A main purpose of summary judgment is to dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary judgment must therefore be granted against a party who fails to demonstrate facts to establish what will be an essential element at trial. Id. at 323.

The burden initially falls upon the moving party to identify for the Court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323). Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings. Anderson v. Liberty

11

Lobby, Inc., 477 U.S. 242, 256 (1986).

**DISCUSSION**

**I.    Plaintiff's FMLA Claim**

Count I of the Complaint alleges that WDI retaliated and discriminated against Plaintiff and terminated her employment on the basis of a serious health condition in violation of § 2612(1)(D) of the FMLA.  WDI argues that Plaintiff's FMLA claim must fail because both of her alleged qualifying events (her alleged serious health condition, and her need to care for her ailing father-in-law) are insufficient to support a claim under FMLA.

The Family and Medical Leave Act of 1993, codified as 29 U.S.C. §§ 2601, et seq., provides in relevant part:

> . . . an eligible employee[5] shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:
>
> . . . .
>
> (C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, or a son, daughter, or parent has a serious health condition.
>
> (D) Because of a serious health condition that

---

[5] The FMLA covers employees who have worked for a covered employer for at least 12 months and for at least 1,250 hours during the previous 12-month period.  29 U.S.C. § 2611(2).  A covered employer is "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year."  29 U.S.C. § 2611(4)(A)(i).

>           makes the employee unable to perform the functions
>           of the position of such employee.

29 U.S.C. §2612(a)(1); see also Funkhouser v. Wells Fargo Bank, N.A., 289 F.3d 1137, 1140 (9th Cir. 2002).

### A. **Leave to Care for a Family Member**

Plaintiff does not contend, nor can she, that she was entitled to FMLA leave to care for her ill father-in-law. The Department of Labor's regulations promulgated under the FMLA (the "FMLA Regulations") provide that a qualifying reason for leave is "[t]o care for the employee's spouse, son, daughter, or parent with a serious health condition." 29 C.F.R. § 825.112(a)(3). The term "parent" under FMLA means "the biological parent of an employee or an individual who stood in loco parentis to an employee when the employee was a son or daughter." 29 U.S.C. § 2611(7). Under the FMLA Regulations, "[t]he term [parent] does not include parents 'in-law.'" 29 C.F.R. § 825.122(b). As such, the Court FINDS that Plaintiff was not entitled to FMLA leave to care for her ailing father-in-law.

### B. **Leave Because of an Employee's "Serious Health Condition"**

Plaintiff argues that she was eligible for FMLA leave because of a "serious health condition," namely, the injury to her back she suffered while in Hong Kong. Under FMLA, a covered employer is required to grant leave to eligible employees "[b]ecause of a serious health condition that makes the employee

13

unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1). The employee has the burden of establishing to the employer that he or she had a serious health condition under the FMLA. Sims v. Alameda-Contra Costa Transit Dist., 2 F. Supp. 2d 1253, 1264 (N.D. Cal. 1998).

A "serious health condition" is defined by FMLA as "an illness . . . that involves (A) inpatient care in a hospital . . .; or (B) continuing treatment by a health provider." 29 U.S.C. § 2611(11). The FMLA Regulations define "serious health condition" as "an illness, injury, impairment or physical or mental condition that involves inpatient care as defined in § 825.114,[6] or continuing treatment by a health care provider as defined in § 825.115." 29 C.F.R. § 825.113(a). Plaintiff does not allege that she qualifies for the "inpatient care" prong of the "serious health condition" definition. Rather, she claims that she is eligible for FMLA leave because she meets the "continuing treatment by a health provider" prong of the definition. [Mem. in Opp. at 10.]

As provided in 29 C.F.R. § 825.115, "continuing treatment by a health care provider" is defined in relevant part as:

---

[6] As provided in 29 C.F.R. § 825.114, "inpatient care" is defined as: "an overnight stay in a hospital, hospice, or residential medical care facility during a period of incapacity as defined in § 825.115, or any subsequent treatment in connection with such inpatient care." 29 C.F.R. § 825.114.

14

> A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> (1) Treatment two or more times, within 30 days of the first day of incapacity, . . ., by a health care provider, by a nurse under the direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
>
> (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of a health care provider.
>
> (3) The requirement in paragraphs a(1) and (2) of this section for treatment by a health care provider means an in-person visit to a health care provider.  The first (or only) in-person treatment visit must take place within seven days of the first date of incapacity[.]

29 C.F.R. § 825.115.

Plaintiff argues that, as a result of her back injury, she was incapacitated for three consecutive days, and that on the day after her injury she "consulted with and received treatment from a doctor in Hong Kong."  [Mem. in Opp. at 12 (citing Tsun Decl. ¶¶ 34-39).]  Plaintiff provides no evidence, however, demonstrating that the doctor she saw in Hong Kong qualifies as a "health care provider" under the FMLA Regulations.

29 C.F.R. § 825.125 defines "health care provider" as:

> (a)(1) A doctor or medicine or osteopathy who is authorized to practice medicine or surgery (as appropriate) by the State in which the doctor practices; or . . . . (b)(5) A health care

>     provider listed above who practices in a country
>     other than the United States, who is authorized to
>     practice in accordance with the law of that
>     country, and who is performing within the scope of
>     his or her practice as defined under such law.

29 C.F.R. § 825.125. Plaintiff has offered no evidence other than her own testimony suggesting that the practitioner she saw in Hong Kong was "authorized to practice in accordance with the law" of Hong Kong, and was "performing within the scope of his or her practice as defined under such law" when he or she treated Plaintiff.[7] Because Plaintiff cannot demonstrate that the doctor in Hong Kong qualifies as a "health care provider" for purposes of 29 C.F.R. § 825.125, she has not demonstrated that she received "continuing treatment by a health care provider" such that her alleged incapacity qualified as a "serious health condition" under 29 U.S.C. § 2611(11). See 29 C.F.R. §§ 825.115, 825.113(a). As such, this Court FINDS that Plaintiff has failed to demonstrate that she had a "serious health condition" that entitled her to FMLA-protected leave.

---

[7] To the extent Plaintiff alleges that she saw her doctor in Honolulu, and that this doctor diagnosed her with a fractured lower back, this likewise cannot support a claim for FMLA-protected leave for a serious health condition. Plaintiff alleges that she visited her doctor in Honolulu after her employment was terminated on November 21, 2011. [Compl. at ¶ 33.] The FMLA Regulations require, however, that "[t]he first (or only) in-person treatment visit must take place within seven days of the first date of incapacity" in order for a condition to qualify as a "serious health condition." 29 C.F.R. § 825.115. Clearly, Plaintiff's visit to her Honolulu doctor occurred more than seven days after her alleged first date of incapacity on October 30, 2011. [See Compl. at ¶ 25.]

16

Because the Court finds that Plaintiff has not shown that she was entitled to FMLA-protected leave, either to care for her father-in-law, or because of her back injury, Plaintiff's FMLA-based claim must fail. As such, the Court GRANTS WDI's Motion as to Count I of the Complaint.

## II. **Plaintiff's HFLL Claim**

In Count II of the Complaint, Plaintiff alleges that WDI "retaliated against, denied and terminated Plaintiff's employment on the basis of her taking protected leave" in violation of the Hawai`i Family Leave Law, Chapter 398. [Comp. at ¶¶ 43-45.]

The HFLL allows an employee to take leave "upon the birth of a child of the employee or adoption of a child, or to care for the employer's child, spouse or reciprocal beneficiary, or parent with a serious health condition." Haw. Rev. Stat. § 398-3(a).

### A. **Leave to Care for a Parent**

Unlike the FMLA, the HFLL defines the term "parent" so as to include parents-in-law. Haw. Rev. Stat. § 398-1. As such, Plaintiff was eligible to take HFLL-protected leave to care for her father-in-law, so long as he had a "serious health condition" as that term is defined in Chapter 398. "Serious health condition" is defined as:

> a physical or mental condition that warrants the

>    participation of the employee to provide care
>    during the period of treatment or supervision by
>    the health care provider, and:
>
>    (1) Involves inpatient care in a hospital,
>    hospice, or residential health care facility; or
>
>    (2) Requires continuing treatment or continuing
>    supervision by a health care provider.

Id. The administrative regulations promulgated under Haw. Rev. Stat. Chapter 398 state that the "need for family leave may encompass both physical and psychological care or comfort." Haw. Admin. R. § 12-27-6(h).

Under this definition, Plaintiff was arguably eligible for HFLL-protected leave when she first requested leave to travel to Hong Kong to care for her father-in-law on September 27, 2011. However, Plaintiff was granted two weeks of leave on that date. [Compl. at ¶¶ 16-19; Mem. in Supp. of Motion, Exh. B (Approved Request for Time Off Form).] While the parties dispute whether Plaintiff was actually aware that her father-in-law had passed away before she left for Hong Kong, the record reflects that his date of death was September 28, 2011 in Hong Kong. [WDI's CSF, Exh. E (Births and Deaths Registry, Hong Kong, Oct. 17, 2011).] Thus, even assuming, as Plaintiff has testified, that she learned of her father-in-law's death once she arrived in Hong Kong on September 29, 2011, clearly Plaintiff was aware that her reason for qualifying for HFLL-protected leave no longer existed well before her two weeks of approved leave expired in October. [See

Mem. in Opp., Tsun Deposition at 138.]  Once Plaintiff's father-in-law passed away, she was no longer eligible for HFLL-protected leave: she no longer needed to care for a qualifying family member with a serious health condition.  <u>See</u> Haw. Rev. Stat. § 398-1.  As such, Plaintiff cannot claim HFLL protection for any additional leave she took after her two weeks of approved leave (plus three days of bereavement leave) expired on October 14, 2011.  Any additional leave Plaintiff took after the expiration of her approved period of leave (namely, the period of time between October 14, 2011 and November 21, 2011) was therefore not HFLL-protected leave.  As such, the Court FINDS that Plaintiff was not entitled to HFLL-protected leave to care for a family member with a serious health condition for the period of her absence from work after the expiration of her approved two weeks of leave.

    **B.**    **<u>Leave for an Employee's Own Serious Health Condition</u>**

It is clear from the text of the HFLL that an employee is not entitled to leave under HFLL to care for his or her own serious health condition.  <u>See</u> Haw. Rev. Stat. § 398-3(a).  As stated in Haw. Admin. R. § 12-27-6(f), family leave for a serious health condition "shall not include the serious health condition of the employee."  Haw. Admin. R. § 12-27-6(f).  As such, the Court FINDS that Plaintiff was not entitled to HFLL-protected leave for her alleged back injury.

Because Plaintiff has failed to demonstrate that she was entitled to HFLL-protected leave after her two weeks of approved leave expired, the Court GRANTS WDI's Motion as to Count II of the Complaint.

## CONCLUSION

On the basis of the foregoing, WDI's Motion for Summary Judgment on Plaintiff's Complaint Filed on January 24, 2012, filed November 26, 2012, is HEREBY GRANTED.  The Complaint is DISMISSED WITH PREJUDICE.  Insofar as there are no remaining claims, the Clerk's Office is instructed to close this case.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, March 28, 2013.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**FANNY K.F. TSUN V. WDI INTERNATIONAL, INC., ET AL.; CIVIL NO. 12-00051 LEK-KSC; ORDER GRANTING WDI'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF FANNY K.F. TSUN'S COMPLAINT FILED ON JANUARY 24, 2012**